```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ALLSTATE INDEMNITY COMPANY,

                    Plaintiff,         MEMORANDUM & ORDER
                                       15-CV-5047(JS)(AKT)
        -against-

PAUL COLLURA, CHRISTINE COLLURA,
BANK OF NEW YORK MELLON f/k/a BANK
OF NEW YORK AS TRUSTEE FOR CERTIFICATE
HOLDER CWALT, INC., UNITED STATES OF
AMERICA, CAPITAL ONE HOME LOANS, LLC,
and COUNTRYWIDE HOME LOANS, INC.,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Karen Maria Berberich, Esq.
                    Rosa M. Feeney, Esq.
                    Caroline Knoepffler Hock, Esq.
                    Lewis Johs Avallone Aviles, LLP
                    One CA Plaza, Suite 225
                    Islandia, NY 11749

For Defendants:
Paul and Christine
Collura              Lloyd M. Eisenberg, Esq.
                     Eisenberg & Carton
                     535 Broadhollow Road, Suite M105
                     Melville, NY 11747

                     Donna Rosanne Ruggiero, Esq.
                     Eisenberg & Carton
                     1227 Main Street, Suite 101
                     Port Jefferson, NY 11777

Bank of New
York Mellon          Sarah Joanne Greenberg, Esq.
                     Eckert Seaman
                     10 Bank Street, Suite 700
                     White Plains, NY 10606
```

1

| | |
|---|---|
| United States of America | Wallace D. Dennis, Esq.<br>Department of Justice, Tax Division<br>Ben Franklin Station, PO Box 55<br>Washington, D.C. 20044 |
| Capital One Home Loans, LLC and Countrywide Home Loans, Inc. | No appearances |

SEYBERT, District Judge:

Plaintiff Allstate Indemnity Company ("Plaintiff" or "Allstate") commenced this interpleader action against Paul and Christine Collura (the "Colluras"), Bank of New York Mellon ("BNY"), the United States of America (the "United States" or the "Government"), Capital One Home Loans, LLC ("Capital One"), Bank of America ("Bank of America"), and Countrywide Home Loans, Inc. ("Countrywide" and collectively, "Claimants") on August 28, 2015. (Compl., Docket Entry 1.)  The Court entered a default judgment against Capital One and Countrywide, and Bank of America was dismissed from the case.  (Apr. 2016 Stip. & Order, Docket Entry 54; Default J., Docket Entry 89.)  As a result, the remaining Claimants are the Colluras, BNY, and the United States.  Currently before the Court is Allstate's motion for reconsideration of this Court's March 22, 2017 Order directing Allstate to deposit $363,000 with the Court to proceed with this action pursuant to 28 U.S.C. § 1335. (Docket Entry 91).  For the following reasons, Allstate's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

The Court assumes familiarity with Judge Tomlinson's Report and Recommendation issued on February 7, 2017 (the "R&R," Docket Entry 83), and this Court's March 22, 2017 Order ("March 2017 Order") addressing BNY's objections to the R&R. See Allstate Indemnity Co. v. Collura, No. 15-5047, 2017 WL 1076328 (E.D.N.Y. Mar. 22, 2017).

I.  Relevant Facts

Allstate issued a homeowners insurance policy (the "Policy") on a property owned by the Colluras (the "Property") in Southhampton, New York. (Compl. ¶ 12.) On March 16, 2015, the Property sustained damage, and the Colluras filed a claim. (Compl. ¶¶ 2-3, 15.) Allstate inspected the damage and estimated the replacement cost value to be $75,460.04. (Estimate, Compl. Ex. B at 65-90, at 85.) Allstate further estimated that the actual cash value of the net claim was $65,582.18, after reductions for depreciation of $4,013.86 and prior payments of $5,864.00. (Estimate at 85.) On August 11, 2015, Allstate provided the estimate to the Colluras and advised that it would settle the claim for $65,582.18. (Settlement Ltr., Compl. Ex. C, at 91-93, at 92.) Pursuant to the terms of the Policy, if the insured does not repair the damage, payment will be made on an actual cash value basis and depreciation is not recoverable. (Policy, Compl. Ex. A, at 22-64, at 40, ¶ 5(b).) Conversely, the Policy provides that if the

3

insured repairs the damage within 180 days of receiving the actual cash value payment, Allstate will "make additional payment to reimburse [the insured] for cost in excess of actual cash value" and depreciation is recoverable.[1]  (Policy at 40, ¶ 5(c).)

After forwarding the estimate to the Colluras, Allstate discovered that there were multiple lienholders with potential claims to the settlement proceeds, including: (1) Capital One, which issued a mortgage and was on the deed for the Property; (2) BNY, to which the mortgage was assigned by Capital One; (3) Bank of America, the mortgage servicer; (4) the United States, which had two federal tax liens on the Property of $75,690.80 and $80,537.52; and (5) a third party who filed a Notice of Pendency against the Colluras.  (Compl. ¶ 18.)  Allstate alleges that it cannot determine which lienholders, if any, are entitled to the proceeds and commenced this action to resolve the competing claims.

II. Procedural History

As stated, Allstate filed the Complaint on August 28, 2015.  The Government answered the Complaint on November 15, 2015 and acknowledged the tax liens.  (U.S. Answer, Docket Entry 21.)

---

[1] Although not material to the pending motion, the Settlement Letter states that "[y]ou may make a claim for additional payment as described in the Building Structure Reimbursement provision and, when applicable, the Personal Property Reimbursement provision if you repair or replace the damaged, destroyed or stolen covered property 'within two years after the date of the loss.'"  (Settlement Ltr., at 92.)

4

Bank of America answered the Complaint on November 30, 2015 and disclaimed any right to the settlement proceeds. (Bank of America Answer, Docket Entry 25.) BNY filed its answer on November 30, 2015 and asserted crossclaims against each of the Claimants. (BNY Answer, Docket Entry 24.) The same day, the Colluras answered the Complaint and asserted a counterclaim against Allstate and crossclaims against each of the Claimants. (Collura Answer, Docket Entry 26.) On April 6, 2016, Bank of America was dismissed from the case. (See Apr. 2016 Stip. & Order.)

On April 15, 2016, Allstate filed a motion requesting permission to deposit the settlement proceeds with the Court and to be released from this litigation. (Mot. to Deposit, Docket Entry 56; Pl.'s Deposit Br., Docket Entry 58.) Specifically, Allstate requested permission to deposit the cash value of the net claim, $65,582.18, immediately, and to deposit depreciation of $4,013.86 at a later date should proof of repairs be submitted (the "Settlement Amount"). (Pl.'s Deposit Br. at 2.) On October 24, 2016, the undersigned referred the motion to Judge Tomlinson for an R&R regarding whether the motion should be granted. (Referral Order, Docket Entry 82.)

A. The R&R

On February 7, 2017, Judge Tomlinson recommended that the Court grant the motion to deposit and allow Allstate to deposit $69,596.04 with the Court and be dismissed from the case. (R&R,

5

Docket Entry 83, at 34.) Judge Tomlinson determined that the jurisdictional requirements were satisfied for statutory interpleader under 28 U.S.C. § 1335 ("Statutory Interpleader"), but that Allstate could only proceed in that manner if it deposited the policy maximum of $363,000.[2] (R&R at 17-28.) Alternatively, Judge Tomlinson found that Allstate could proceed under Federal Rule of Civil Procedure 22 ("Rule Interpleader") because Allstate demonstrated an independent basis for subject matter jurisdiction--diversity jurisdiction under 28 U.S.C. § 1332. (R&R at 28-31.) In light of this determination, and having found that Allstate was a neutral stakeholder with no interest in the proceeds, Judge Tomlinson recommended that the Court discharge Allstate from this action after it deposited $69,596.04 with the Court. (R&R at 36.)

Without deciding the issue, Judge Tomlinson also addressed whether, in addition to diversity jurisdiction, there was a basis for federal question jurisdiction. (R&R at 31, n.11.) Acknowledging that there was some authority to support federal question jurisdiction in these circumstances, Judge Tomlinson determined that "the United States has not brought a 'coercive action' against the Colluras at this juncture which could provide

---

[2] As Judge Tomlinson explained, "BNY has disputed the sufficiency of th[e] [settlement] amount and instead invokes the Policy to assert that Plaintiff should deposit the maximum amount of dwelling coverage provided for." (R&R at 27.)

6

the Court with the requisite federal question jurisdiction based [ ] on the outstanding tax liens." (R&R at 31, n.11.)

BNY objected to Judge Tomlinson's Report and Recommendation, and the Government filed a response to those objections. (See BNY Obj., Docket Entry 86; U.S. Reply, Docket Entry 87.) Significantly, the Government argued that diversity jurisdiction was not a basis for subject matter jurisdiction because the presence of the United States as a party destroyed complete diversity. (U.S. Reply at 4.)

B. The Court's March 2017 Order

On March 22, 2017, this Court issued its order addressing BNY's objections and the Government's jurisdictional argument. See generally Allstate Indemnity Co., 2017 WL 1076328. The Court concluded that because the United States was a defendant, complete diversity was lacking. Id. at *4. Additionally, citing to Judge Tomlinson's R&R, the Court noted that "there [was] no basis for federal question jurisdiction at this juncture." Id. at *5, n.8. In light of its determination that there was neither diversity nor federal question jurisdiction, the Court concluded that "Rule 22 [was] not a proper basis for interpleader jurisdiction," and directed Allstate to proceed via Statutory Interpleader. Id. at *5. Thus, Allstate was directed to deposit the policy maximum, $363,000, before it could be discharged. Id. The Court indicated

7

that it would revisit the issue of whether Allstate should be discharged upon deposit of the funds. Id.

   C. The Motion for Reconsideration

   On April 3, 2017, Allstate filed a motion for reconsideration, arguing that the Court overlooked authority "regarding federal question jurisdiction when Federal Tax Liens are at issue." (Pl.'s Br., Docket Entry 91-2, at 2.) Specifically, Allstate contends that because "there would be federal [question] jurisdiction if the Defendant had filed a coercive action," there is federal question jurisdiction over this interpleader action. (Pl.'s Br. at 6.) Thus, Allstate maintains that Rule Interpleader is appropriate here and requests that it be permitted to deposit $69,596.04 and be discharged from this action. (Pl.'s Br. at 2.) Additionally, Allstate renews its request that the Court dismiss the Colluras' counterclaim. (Pl.'s Br. at 7-9.)

   BNY opposed the motion for reconsideration on April 17, 2017. (BNY Opp., Docket Entry 92.) BNY argues that Allstate's motion is "a clear attempt to plug the gaps in its earlier motion." (BNY Opp. at 1 (internal quotation marks omitted).) It argues that the authority cited by Allstate does not support federal question jurisdiction because the Government has not brought any coercive action against Allstate. (BNY Opp. at 3-4.) Further, it contends that even if the Court were to find jurisdiction on

8

this basis, Allstate should not be discharged until it deposits the policy maximum of $363,000 with the Court. (BNY Opp. at 1.)

In response, Allstate points out that it did raise federal question jurisdiction in its initial motion to deposit funds. (Pl.'s Reply Br., Docket Entry 93, at 1;[3] see also Pl.'s Deposit Br., at 4-5.) Moreover, Allstate emphasizes that the appropriate inquiry is whether federal question jurisdiction would exist in a coercive action, regardless of whether one has been commenced. (Pl.' Reply Br. at 2.)

DISCUSSION

I. Legal Standards

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3. See Wilson v. Pessah, No. 05-CV-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). A motion for reconsideration is appropriate when the moving party believes the Court overlooked important matters or controlling decisions that would have influenced the prior decision. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). Reconsideration is not a proper tool to repackage and reiterate arguments and issues already considered by the Court in deciding the original motion. United States v. Gross, No. 98-CR-0159, 2002

---

[3] The page numbers for Plaintiff's Reply Brief are those generated by the Electronic Case Filing System.

9

WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Additionally, reconsideration does not provide an opportunity to raise new arguments and issues. Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Reconsideration may only be granted when the Court did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the Court. Wechsler v. Hunt Health Sys., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

Interpleader actions are "designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." Fidelity Brokerage Servs., LLC v. Bank of China, 192 F. Supp. 2d 173, 177 (S.D.N.Y. Mar. 18, 2002). Interpleader actions may proceed under Federal Rule of Civil Procedure 22 or 28 U.S.C. § 1335. Under Rule 22, the plaintiff must demonstrate either diversity jurisdiction or federal question jurisdiction. CF 135 Flat LLC v. Triadou SPV S.A., No. 15-CV-5345, 2016 WL 1109092, at *2, n.1 (S.D.N.Y. Mar. 18, 2016). Additionally, the interpleader plaintiff must also show that the "claims in question may expose [that] party . . . to double or multiple liability." Id. at *2 (quoting FED. R. CIV. P. 22(a)(1)) (internal quotation marks omitted). Generally, "[a] neutral stakeholder having no claim to the subject matter of the action" may be discharged after the disputed funds are

10

deposited with the Court. Aon Corp. v. Hohlweck, 223 F. Supp. 2d 510, 514 (S.D.N.Y. Sept. 3, 2002).

II. Federal Question Jurisdiction

Because there is no diversity jurisdiction, in order to maintain this action under Rule 22, Allstate must demonstrate that there is federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. That section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because "[b]oth interpleader and declaratory judgment actions 'enable a defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience,'" courts have likened interpleader actions to actions seeking declaratory judgments. Com. Union Ins. Co. v. United States, 999 F.2d 581, 585 (D.C. Cir. 1993) (quoting Bell & Beckwith v. United States, 766 F.2d 910, 914 (6th Cir. 1985)). In these cases, "although the plaintiff's claim does not raise a federal question, [the court] may stake . . . jurisdiction on 'a defense to a claim that would raise a federal question and that defendant could have asserted in a coercive action.'" Id. at 585 (quoting Bell & Beckwith, 766 F.2d at 912).

Although the Second Circuit has not addressed the issue, the majority of courts to address whether there is federal question jurisdiction when the Government makes a claim to funds in an

11

interpleader action based on unpaid taxes--including several courts in this Circuit--have held that federal question jurisdiction exists. See, e.g., Woods Oviatt Gilman, LLP v. United States, No. 12-CV-6286T, 2013 WL 1636042, at *4 (W.D.N.Y. Apr. 16, 2013) (holding that the fact that "the IRS, acting pursuant to federal law, has made a claim to the funds held by the plaintiff" was sufficient to confer federal question jurisdiction in interpleader action); Advantage Title Agency, Inc. v. Rosen, 297 F. Supp. 2d 536, 539 (E.D.N.Y. 2003) (finding that the court had subject matter jurisdiction in interpleader action when federal government was seeking to enforce federal tax liens); Allstate Settlement Corp. v. United States, No. 07-CV-5123, 2008 WL 2221897, at *4 (E.D. Pa. May 28, 2008) (holding that the court had subject matter jurisdiction over Rule 22 interpleader action in part because "this case involves a tax lien by the United States Internal Revenue Service"); Shelter Mutual Ins. v. Gregory, 555 F. Supp. 2d 922, 928 (M.D. Tenn. 2008) (holding that "given the United States' effort to enforce a federal tax lien," the court had federal question jurisdiction because the interpleader action "directly affect[ed] the nature or operation of a lien"); CPS Electric, Ltd. v. United States, 166 F. Supp. 2d 727, 730-31 (N.D.N.Y. 2001) (holding that there was federal question jurisdiction when the Government was a claimant and resolving the

competing claims to the fund was "dependent upon . . . whether the [federal] tax lien is valid").

For example, in Rosen, the plaintiff was involved in the closing of a sale of property when a title search revealed that the property was subject to four federal tax liens. Rosen, 297 F. Supp. 2d at 537-38. After the sale proceeds were deposited into an escrow account, several parties (including the government) asserted claims to the funds, and the plaintiff filed an interpleader action in state court. Id. at 538. Subsequently, the government removed the action to federal court. Id. The district court found that there was federal question jurisdiction because the action was effectively an action to enforce the federal tax liens. Id. at 539.

Here, as in Rosen, before Allstate remitted payment pursuant to the Colluras' insurance policy, it discovered that there were two federal tax liens on the Property and commenced an interpleader action. Based on those liens, the Government claims that it is entitled to the Settlement Amount.[4] Because there would

---

[4] The Court recognizes that the Government has not asserted a counterclaim or crossclaim in its Answer. However, the Government does assert that based on federal law, its claim to the funds is superior, which this Court finds is sufficient to confer jurisdiction. (See U.S. Reply to Mot. to Deposit, Docket Entry 74, ¶ 1 ("The United States is a creditor of defendants Paul and Christina Collura . . . and claims that it has a valid lien that is superior to BNY Mellon's lien regarding the insurance funds at issue. . . . [A]s a matter of law, the United States--not BNY Mellon--would have priority over the insurance

13

be federal question jurisdiction in an independent action brought by the Government to enforce the liens, there is federal question jurisdiction when the Government is seeking to enforce the liens through interpleader. See Blackmon Auctions, Inc. v. Van Buren Truck Ctr., Inc., 901 F. Supp. 287, 290 (W.D. Ark. 1995) ("[I]t could not be clearer that the IRS action to enforce the tax lien arises under federal law, since federal law created the cause of action . . . [and] Congress has specifically provided for federal jurisdiction in any case involving federal tax law."); see also 26 U.S.C. § 7403(a) ("In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not a levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to filed in a district court of the United States to enforce the lien of the United States."); 26 U.S.C. § 7402(a) ("The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue civil actions, writs and order of injunction, and of ne exeat republica,

---

funds. See 26 U.S.C. § 6321. . . .").) See also Stockton Christian Life Ctr., Inc., v. U.S.Internal Revenue Serv., 172 F. Supp. 2d 1292, 1297 (E.D. Cal. 2001) (acknowledging that "if the IRS were actively litigating its tax lien . . . or pursuing its claim to the interpled funds, . . . federal question jurisdiction would lie" but finding no jurisdiction based on Government disclaiming its right to the funds) (emphasis supplied).

14

orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."). Moreover, when there are competing claims to a fund which will require the Court to look to federal law to determine priority, there is federal question jurisdiction since "'matters directly affecting the nature or operation of such [tax] liens are federal questions, regardless of whether the federal statutory scheme deals with them or not.'" Blackmon Auctions, Inc., 901 F. Supp. at 290 (quoting St. Louis Union Trust Co. v. Stone, 570 F.2d 833, 835 (8th Cir. 1978)) (alteration in original); see also Allstate Settlement Corp., 2008 WL 2221897, at *4.

While the Sixth and Seventh Circuits have dismissed interpleader actions involving federal tax liens for lack of jurisdiction, these cases are distinguishable. See Bell & Beckwith, 766 F.2d at 916-17; Com. Nat'l Bank of Chicago v. Demos, 18 F.3d 485 (7th Cir. 1994). In Bell & Beckwith, for example, the government and another individual were each claiming that they were entitled to the proceeds of an investment account. Bell & Beckwith, 766 F.2d at 911. The critical issue was who owned the account, which the Sixth Circuit found would be determined by state law. Id. at 916. As a result, it concluded that "[b]ecause determination of a state-law issue could have obviated the need for resolution of any federal issue," there was no federal question

jurisdiction. Id. Additionally, the Sixth Circuit distinguished Bell & Beckwith, which involved a "threshold question of [the] validity" of the lien, from cases involving the "nature or operation" of a lien, implying that if the "nature or operation" of a lien were at issue, the result may be different. Id. at 916.

In Demos, the Seventh Circuit held that there was no federal question jurisdiction for the same reason--"because the only question [was] one of ownership of the accounts, an issue governed solely by state law." Demos, 18 F.3d at 490. Further, the Seventh Circuit acknowledged that while priority was not an issue due to a settlement, "a question of priority of [the attorney's] lien as against the government's lien might otherwise raise a federal question because the priorities of tax liens are governed by the federal statutory scheme." Demos, 18 F.3d at 489 n.6.

Here, resolving the competing claims will require determining the priority of the claims, including the Government's, and the Government has specifically asserted that it is entitled to the Settlement Amount pursuant to federal law. (See supra at 13 n.3.) As a result, the Court is not persuaded by the reasoning in Bell & Beckwith and Demos. See Woods, 2013 WL 1636042, at *4 ("While it is true that resolution of the conflicting claims made against any funds may turn on issues of state law, 'since a federal tax lien is wholly a creature of

16

federal law, the consequences of a lien that attaches to property interests, e.g., priority determinations, are matters of federal law.'") (quoting Atl. States Constr. Inc., v. Hand, Arendall, Bedsole, Greaves and Johnston, 892 F.2d 1530, 1534 (11th Cir. 1990)). Moreover, putting aside the factual distinctions, the reasoning underlying both decisions has been questioned by several courts. See, e.g., Blackmon Auctions, Inc., 901 F. Supp. at 290-93 ("It appears to the court that the reasons for dismissal given by the Sixth and Seventh Circuits are deficient."); CPS Electric, 166 F. Supp. 2d at 731 & n.3 (finding that contrary reasoning in several district court cases "raises serious concerns about the basis for the Sixth Circuit's decision in Bell & Beckwith").

Therefore, the Court holds that there is federal question jurisdiction over this action and that it can be properly maintained under Rule 22. Allstate is directed to deposit $69,596.04 with the Court. Because Allstate has no interest in the allocation of the Settlement Amount, it is entitled to be discharged from this action pending the deposit.[5] See Aon Corp., 223 F. Supp. 2d at 514. However, if Allstate seeks to withhold the recoverable depreciation of $4,013.86 until proof of repairs

---

[5] BNY claims--without any support--that Allstate is not entitled to discharge because it is not a neutral stakeholder. (BNY Opp. at 5-6.) The Court is not persuaded. As discussed, it is undisputed that Allstate does not have any interest in the Settlement Amount. Therefore, discharge is appropriate.

17

is submitted, it will remain a party to the case until that issue is resolved. (See R&R at 36, n.14.)

III. The Colluras' Counterclaim

For the second time, Allstate requests that the Colluras' counterclaim against it be dismissed. (Pl.'s Br. at 7.) Previously, the Colluras advised the Court that they did not oppose this request. (Eisenberg Decl., Docket Entry 70, at ¶ 2.) On that basis, and in light of uncertainty regarding whether Allstate would continue to seek a discharge from this action, the Court advised the Colluras to dismiss the counterclaim under Federal Rule of Civil Procedure 41(a)(2). Allstate Indemnity Co., 2017 WL 1076328, at *5 n.10. The Colluras have not done so. However, they did not file any opposition to Allstate's motion for reconsideration. Accordingly, the Colluras are directed to file a stipulation of discontinuance dismissing their counterclaim against Allstate within fifteen (15) days of the date of this Memorandum and Order.

## CONCLUSION

For the foregoing reasons, Allstate's motion for reconsideration (Docket Entry 91) is GRANTED IN PART and DENIED IN PART. Allstate is directed to deposit $69,596.04 with the Court within ten (10) days of the date of this Memorandum and Order. The Colluras are directed to file a stipulation of discontinuance dismissing their counterclaim against Allstate within fifteen (15)

18

days of the date of this Memorandum and Order.  After the deposit of the Settlement Amount and submission of the stipulation of discontinuance, Allstate will be dismissed from this action.  However, as discussed above, if Allstate seeks to withhold the recoverable depreciation of $4,013.86 until proof of repairs is submitted, it will remain a party to the case until that issue is resolved.

                                          SO ORDERED.

                                          /s/ JOANNA SEYBERT_____
                                          Joanna Seybert, U.S.D.J.

Dated:       February __5__, 2018
              Central Islip, New York